**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**ROBERT WILLIAMS,**

                    **Plaintiff,**

    **v.**                                        **1:05-cv-3056-WSD**

**DEKALB COUNTY, et al.,**

                    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants DeKalb County's ("the County") and Lewis Graham's ("Chief Graham or Graham") Motion for Summary Judgment [61], Plaintiff's Motion for Default Judgment as to Defendant Ronald Jones [60][1], Defendants' Motion for Leave to File Brief in Excess of Page

---

[1] Plaintiff requests Default Judgment as to Defendant Ronald Jones because Jones has failed to respond to this lawsuit in his individual capacity. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by [the Federal] rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff has represented in his pleading in response to Defendant's summary judgment motion, that Defendant Jones has failed to respond to the Complaint in his individual capacity. Accordingly, the Court considers Plaintiff's Motion for Default Judgment as a motion for entry of default against Defendant Jones on Plaintiff's claim against Jones in his individual capacity and the Clerk of Court is **DIRECTED** to enter default against Defendant Jones. Because Plaintiff has not requested entry of default judgment in a sum certain or offered evidence upon which a default judgment may be entered, default judgment cannot be entered at this time. After default is entered by the Clerk, the Court will schedule a hearing

Limitation [65], and Plaintiff Robert Williams' ("Plaintiff") Motion for Leave to

File Plaintiff's Responsive Brief in Excess of Page Limitation [77].[2]

## I.      BACKGROUND

On November 1, 2004, Defendant Ronald Jones ("Defendant Jones" or

"Jones"), a DeKalb County police officer, encountered Plaintiff Williams, a

homeless individual, at a bus stop near Wesley Chapel Road.  (Def. Statement of

Material Facts ("Def. SMF") [62], at ¶ 28.)  Jones told Plaintiff to move, and

Plaintiff complied.  Later that night, Jones saw Plaintiff behind a Chinese

restaurant and again told him to move.  Plaintiff stated that he had already moved

once, that he was homeless and had no where else to go.  Jones asked Plaintiff if he

wanted to go to jail, and Plaintiff said he did.  Jones patted Plaintiff down, opened

the door to his police car, and Plaintiff got inside.  Jones did not place handcuffs on

Plaintiff.  Once Plaintiff was in the car, Jones began driving in the opposite

direction from the jail.  (Id. at ¶ 31.)  When Plaintiff asked Jones where he was

being taken, Jones responded that he was taking Plaintiff where he took other

_____

on the Motion for Default Judgment.

[2]  Both Defendants and Plaintiff seek leave to file briefs in excess of the page
limitation required by the Court's local rules (L.R. 7.1(D)).  The Motions are
unopposed, and they are **GRANTED**.

homeless people he found on his beat.  Jones did not advise his supervisor or anyone else at the police department of his location or where he was taking the Plaintiff.

Jones stopped his police car in a dark wooded area by Snapfinger Road in Rockdale County, and told Plaintiff to get out of the car.  Plaintiff refused and resisted Jones's efforts to remove him from the vehicle.  Jones then stabbed Plaintiff several times in his arm, above his waist and in his leg.  Jones also tried to cut Plaintiff's neck, but cut Plaintiff's chin instead.  Jones pulled out his gun, but Plaintiff managed to grab the weapon from Jones and ran with it into the woods. As Plaintiff fled the area, he threw Jones's gun away.  (Id. at ¶ 34.)  Plaintiff hid in the woods until early morning.  He was arrested when he emerged from the woods. Defendant Jones falsely stated to investigators that Plaintiff had  kidnapped and assaulted him.  Based on this false statement, Plaintiff was charged with kidnapping, armed robbery, and attempted murder.[3]  (Id. at ¶ 35.)

An investigation into the events of November 1, 2004, was initiated by the

---

[3] Jones's response to this citizen is serious and intolerable.  A Government's primary function is to protect its citizens, regardless of their status or circumstances.  Defendant Jones failed completely in this important primary responsibility.

DeKalb County Police Department after Plaintiff was arrested on November 2nd.

Having apparently gathered initial information, two days after the investigation

commenced, the police department interviewed Jones. The interview revealed that

Jones had lied about the incident, and he immediately resigned.  As a result of the

investigation, the charges against Plaintiff were dropped, and Jones was indicted

for his conduct.

Defendant Lewis Graham's first day as the Chief of Police for DeKalb

County was November 1, 2004, the same day that Jones and Plaintiff were

involved in the incident discussed above.  (Id. at ¶ 36.)  Defendant Graham was

first made aware of the encounter involving Plaintiff and Defendant Jones after the

incident had occurred.

On October 26, 2005, Plaintiff filed a lawsuit in the Superior Court of Fulton

County, Georgia against DeKalb County, Jones in his official and individual

capacities, and Chief Graham in his official and individual capacities.  (Compl.

[1].)  Plaintiff asserted one federal and three state-law claims:  violation of

constitutional rights under 42 U.S.C. § 1983, false imprisonment under O.C.G.A.

16-5-42, kidnapping under O.C.G.A. 16-5-40, and aggravated assault under

O.C.G.A. 16-5-21.  (Id. at ¶¶ 7-9.)

4

On December 1, 2005, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, based on federal question jurisdiction.  (Notice of Removal [1], at ¶ 1.)  In removing the case, counsel for the Defendants noted that they did not represent Defendant Jones in his individual capacity.  Defendants filed their Answer on December 6, 2005.

On February 23, 2006, the Court entered a consent order submitted by the parties dismissing the claims against Graham and Jones in their official capacities.  (February 23, 2006 Order [14].)  Defendant Jones, in his individual capacity, has not responded to Plaintiff's Complaint.[4]  On August 24, 2006, Defendants filed this Motion for Summary Judgment, arguing that Plaintiff's claims should be dismissed as a matter of law.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[4] Counsel for Defendants advised the Court that they did not believe Jones was represented with respect to the claims asserted against him in his individual capacity.  There is no indication in the Court's records that Jones is represented with respect to the claims asserted against him.  (February 23, 2006 Order, at ¶ 2.)

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  "[W]here the record taken as a whole could not lead a rational trier of fact

6

to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. County Liability under 42 U.S.C. § 1983

The Court begins by noting that the briefing by the parties on Defendants' motion for summary judgment is difficult to understand. The logic is not clear, and the argument and interpretation of authorities is not well-presented.[5] After considerable study and interpretation of the submissions, the Court believes it has discerned the arguments and positions of the parties on Plaintiff's § 1983 claim.

Plaintiff argues that he asserts a valid § 1983 claim against the County because its employee, Jones, used excessive force and injured Plaintiff when Jones tried to remove Plaintiff from his vehicle.[6] Plaintiff appears to advance two theories to hold the County liable for Defendant Jones's actions. First, Plaintiff

_____

[5] Section 1983 law is technically difficult and sometimes confusing. The critical thought and care required to address § 1983 issues are not present in the parties' submissions to the Court.

[6] The Court notes that this case is unique because excessive force claims ordinarily involve complaints about police conduct when a plaintiff is arrested or in custody. Here, Plaintiff is alleging excessive force in the course of Jones seeking to force Plaintiff out of custody.

argues that the County can be liable for Jones's infringement of Plaintiff's constitutional rights because the County was negligent in hiring Jones and inadequately trained and supervised him.  (Pl. Resp. to Def. MSJ, at 24, 36.) Second, Plaintiff argues that Jones's actions were taken pursuant to a police department policy or custom to transport homeless persons from DeKalb County to remove them from the police officer's jurisdiction and that this policy was the moving force behind the violation of Plaintiff's rights.  (Id. at 28.)  The Court disagrees that the County is liable under § 1983 for Jones's conduct.

There is no respondeat superior liability under § 1983.  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (2001).  It is well-settled that to sue a municipality under § 1983, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom."  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005); see also Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978) (holding that a § 1983 action against a governmental body may be brought where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or those "visited pursuant to governmental custom")

A local government body is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Monell, 436 U.S. at 694.  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.  A custom is a practice that is so settled and permanent that it takes on the force of law."[7] Cooper, 403 F.3d at 1221 (quotation and citations omitted).  "There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority."  Hyath v. City of Decatur, 2006 U.S. Dist. LEXIS 21184, at * 29-30 (N.D. Ga. 2006).

"[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various

---

[7] A "threshold identification of a custom or policy" should initially be made to ensure that a municipality is "held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality."  McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004).

alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); see also Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability.")  "State and local positive law determine whether a particular official has final policymaker authority for § 1983 purposes." Cooper, 403 F.3d at 1221.

The discussion of these principles in Church v. City of Huntsville is helpful. In Church, the Eleventh Circuit explained:  "[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." Church, 30 F.3d at 1343.  To establish the existence of a practice or custom under the second prong, "it is generally necessary to show a persistent and wide-spread practice." Id. at 1345.  Section 1983 only "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell, 436 U.S. at 692.  Put another way, the governmental policy or custom must be the moving force behind the

constitutional deprivation.  <u>Farred v. Hicks</u>, 915 F.2d 1530, 1532-33 (11th Cir. 1990).

I.    *Failure to Train and Supervise*

Plaintiff argues that the County is liable for Defendant Jones's actions because it failed adequately to train and supervise Jones.  (Pl. Resp. to Def. MSJ, at 24, 36.)[8]  The Supreme Court has placed stringent requirements for municipal liability under § 1983.  Because there is no respondeat superior liability making a county liable for the wrongful actions of its police officers, the county can only be liable when municipal official policy causes a constitutional violation.  <u>Monell</u>, 436 U.S. at 692; <u>see also</u> <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998).  Only under certain limited circumstances can a police department's failure to train or supervise its officers constitute a "policy" giving rise to governmental liability.  <u>Farred</u>, 915 F.2d at 1533.  The Supreme Court has held these limited circumstances occur only where the government entity inadequately trains or supervises its

---

[8] In a case involving alleged use of excessive force, § 1983 analysis ordinarily begins "by identifying the specific constitutional right allegedly infringed by the challenged application of force."  <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).  The Court assumes a violation of Plaintiff's constitutional right to be free from excessive force was violated.  That a right was violated, however, "does not necessarily mean that [the] County is liable for [the violation alleged.]" <u>Vineyard v. County of Murray</u>, 990 F.2d 1207, 1211 (11th Cir. 1993).

11

employees pursuant to a policy, and that failure to train or supervise causes the employees to violate a citizen's constitutional rights.  City of Canton v. Harris, 489 U.S. 378, 389-91 (1989).

In the absence of a written or oral policy, "the inadequacy of police training [or supervision] may serve as a basis for § 1983 liability only where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Id. at 388.  To establish deliberate indifference, "a plaintiff must present some evidence that the [government entity or policymaker] knew of a need to train and/or supervise in a particular area and the [government entity or policymaker] made a deliberate choice not to take any action."  Gold, 151 F.3d at 1350; see also Reed v. City of Lavonia, 390 F. Supp. 2d 1347, 1367 (M.D. Ga. 2005) (finding the defendant city was not liable for actions of a police officer because plaintiff did not point to specific evidence showing the city was on notice that additional baton training for the officer was needed and stating that "a city is not deemed to have notice of past police misconduct if the plaintiff never demonstrated that past complaints . . . had any merit"); Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (finding no liability on the sheriff's department for failure to train where there was "no evidence of a history of widespread prior

12

abuse" to put the sheriff on notice that improved training or supervision was needed).

In City of Canton, the Supreme Court explained: "The issue in a [failure to train case] is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent city policy." City of Canton, 489 U.S. at 390 (quotations and citations omitted). In certain situations, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to that need." Id. "[T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Id. at 390-91.[9]

---

[9]  The Court believes City of Canton applies equally to a failure to supervise claim.  See Gold, 151 F.3d at 1350.

Plaintiffs also must meet a high standard in showing the connection between the training or supervision and the injury suffered.  "[T]he identified deficiency in a city's training program must be closely related to the ultimate injury . . . [the plaintiff] must still prove that the deficiency in training actually caused [the plaintiff's injury]."  Id. at 391.  This high standard is necessary because "a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities–a result [the Supreme Court] rejected in Monell."  Id. at 392.

There is no evidence indicating that the County was aware of the need to additionally train or supervise Jones or other officers on the use of force and yet deliberately chose not to do so.  See Gold, 151 F.3d at 1351 (noting that plaintiff had not presented any evidence of prior constitutional violations involving the conduct at issue).  Plaintiff does not present any evidence of instances generally in the police department involving excessive use of force with the homeless or otherwise, and he does not present any evidence that the County failed to train or supervise Jones on the appropriate use of force.  Plaintiff, at most, points to evidence of incidents involving Jones's supposed propensity for violence to show the County was on notice of a need to further train and supervise Jones.  (Pl. Resp. to Def. MSJ, at 24.)  The incidents cited show that when complaints were made

14

about any improper use of force by Jones, the County responded appropriately and consistently.  In December 2001, Jones was counseled for the use of force after a minor incident where Jones arrested an individual who refused to sign a citation for speeding.  (Memorandum re: Use of Force, attached to Resp. to Def. MSJ [76] as Ex. K.)  In October 2002, an investigation was conducted into a complaint lodged by Nathaniel Webb against Defendant Jones.  (Complaint Investigation Report, attached to Resp. to Def. MSJ, as Ex. M.)  Webb alleged that Jones, while responding to a domestic violence complaint, used an excessive amount of authority in drawing and pointing his weapon at him and used abusive and profane language. The investigation concluded that there was insufficient evidence to sustain Webb's allegations.  (Id.)  Even so, the Report concluded that Jones should attend a training class in interpersonal communication and crisis intervention.  (Id.)  This evidence shows the County investigated the complaints noted by Plaintiff and even

conducted additional training to ensure that officers appropriately interacted with

citizens.[10]

    Plaintiff has failed to satisfy the high standard required by <u>Monell</u> and <u>City of</u>

---

[10]   As further evidence of Jones's alleged propensity for violence, Plaintiff
submits evidence of an incident in 2003 where Jones allegedly used force after he
transported a homeless person in his car.  Plaintiff also offers the testimony of a
former police officer, Curry, who claimed that Jones struck an unconscious and
handcuffed suspect whom Curry had arrested.  (Curry Depo, at 7-9.)  Plaintiff's
evidence, however, is insufficient to show the County knew of the need to further
train or supervise on the use of force.  In fact, a Rockdale County incident report of
the 2003 incident shows the complainant could not describe the car the officer was
driving.  A medical examination of the complainant did not reveal any injuries.
The evidence is further that the police department was not aware of Jones's alleged
involvement in this incident before November 1, 2004.  The complainant stated
that he did not know who the officer was and did not identify Jones until after the
altercation between Jones and Plaintiff almost a year later.  Although the incident
report notes that DeKalb County Internal Affairs was informed, there is no
evidence that final policymakers within the DeKalb police department knew of the
incident, and they definitely did not know it was Jones.  Second, the incident with
Officer Curry involved the apprehension of a criminal who was engaging in very
aggressive and dangerous conduct toward police officers.  Curry claims Jones hit
and verbally accosted the arrested individual.  Although Curry believes he reported
Jones's conduct, he cannot recall to whom he made such a report, nor the
individual's position in the department.  Plaintiff's evidence at best amounts to two
incidents over the span of three years–one of which cannot be confirmed as being
reported to supervisors and one where Jones was appropriately counseled.  This is
insufficient evidence to show that the County was on notice of a need to train or
supervise in the use of force.  The undisputed evidence is that the department had
in place effective procedures to respond to claims of Jones's improper use of force
and that these procedures were followed when appropriate department officials
were advised of a complaint.

Canton to hold the County responsible for Defendant Jones's conduct.  The

identified deficiency in a training program or the alleged supervision failure must

be closely related to the ultimate injury, and Plaintiff must prove that the deficiency

in training or supervision actually caused his injury.  Plaintiff simply has not

submitted evidence showing that the County's use of force training was deficient or

that it did not adequately supervise officers in the application of force, and that this

deficiency caused Plaintiff's beating.[11]

Furthermore, there is no evidence that the County was deliberately indifferent

to a need to train or to supervise officers on the use of force and the circumstances

in which it is appropriate.  Rather, the evidence is that when officials in the

department heard of Jones allegedly using excessive force, it investigated the

---

[11] To the extent that Plaintiff asserts his constitutional rights were violated
when he was arrested based on false statements made by Jones, the County also
cannot be liable.  The police department responded to a police officer's report of a
kidnapping and assault and had no reason to know that the report was false.  An
investigation was immediately opened, and Plaintiff was promptly cleared of all
charges.  There is no evidence on which to hold the County at fault for Plaintiff's
arrest after his altercation with Jones.  See Madiwale v. Savaiko, 117 F.3d 1321,
1324 (11th Cir. 1997) (noting that while it is a violation of the Fourth Amendment
to make an arrest without probable cause to believe a crime has committed,
probable cause exists "if the facts and circumstances within the collective
knowledge of the law enforcement officials, of which they had reasonably
trustworthy information, are sufficient to cause a person of reasonable caution to
believe that an offense has been or is being committed").

incident, including meeting with Jones and, where appropriate, required him to undergo additional training.

Importantly, the evidence is that the County fully investigated the altercation between Plaintiff and Jones.  The investigation was immediate and disclosed early on that Jones had made false statements to authorities.  The investigation immediately focused on Jones, quickly caused him to leave the department and ultimately resulted in the referral of criminal charges against him.  The facts show that the County was not deliberately indifferent to the inappropriate use of force by officers and has in place policies and practices to address and respond to claims of excessive use of force, including those made against Jones.

### ii.    *Negligent Hiring*

Plaintiff next argues that the County may be held liable under § 1983 for negligently hiring Defendant Jones as a police officer.  Isolated decisions, such as a hiring decision, may represent an act of official government policy "if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers."  Reed, 390 F. Supp. 2d at 1364 (citing Pembaur, 475 U.S. at 480-81).  Still, "[m]unicipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action

ordered."  Id.  As discussed below, Chief Graham did not have final policymaking authority over hiring in the police department.  Furthermore, Jones was not hired by Chief Graham.  Jones was hired in 2000, well before Graham became the Chief of Police.[12]  Plaintiff fails to identify and present evidence that a final policymaker negligently hired Defendant Jones.  Without this evidence, Plaintiff cannot establish liability on behalf of the County for the hiring of Defendant Jones.

### iii.   Policy or Custom of Removing Homeless from the County

Plaintiff also appears to argue that the County is responsible for the violation of his constitutional rights because the County allowed a policy or widespread practice to develop among police officers of removing homeless people outside of the County.  Specifically, Plaintiff claims this policy or practice led to the violation of Plaintiff's right to be free from the excessive use of force.  Plaintiff's reliance on this alleged policy is misplaced.  First, there is little direct evidence, other than the

---

[12] "It is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior."  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation."  Id.  Plaintiff has not shown any causal connection between any actions of Chief Graham and his beating, much less that Chief Graham personally participated in the constitutional violations.

belief of a few police officers, that these types of removals were actually carried out.[13]  More importantly, there is no evidence, even if the removals occurred, that homeless people were harmed during or as a result of removal.  Defendants' motion for summary judgment on Plaintiff's § 1983 claim against the County is required to be granted on this failure of evidence alone.

Even if there was a practice to remove homeless people from the County, Plaintiff has not shown that this policy of removal was the moving force behind the constitutional rights violation he alleges.  "It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation.  The official policy or custom must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983."  Cuesta v. Sch. Bd. of Miami-Dade County, Fla., 285 F.3d 962, 967 (11th Cir. 2002) (quotations and citations omitted).  To show a moving force, the plaintiff "must demonstrate a direct

---

[13] Plaintiff submits the deposition testimony of several police officers as evidence there was a widespread practice of transporting homeless persons outside of DeKalb County.  These police officers stated that they had heard of police officers removing homeless persons from DeKalb County, with or without their consent, in order to clean up the officer's jurisdiction.  These officers were not aware of any specific instances where such removals occurred.  Moreover, they had not heard of excessive force being used in this removal process, nor did they state they believed excessive force was ever used.

causal link between the municipal action and the deprivation of federal rights." <u>Id.</u>
Even if officers removed homeless persons outside the County, the testimony
offered by Plaintiff does not indicate that such transportation led to the use of
excessive force on homeless persons.  There simply is no direct causal link between
the policy alleged and the injury Plaintiff suffered.  Thus, Plaintiff cannot hold the
County liable for Jones' actions–disturbing as they were–because they were not the
result of any policy, custom, or widespread practice in the County.[14]

iv.     *Liability for Decisions of a Final Policymaker*

Defendants also argue that the County is not liable under § 1983 for any
actions taken by Chief Graham because he is not a final policymaker.  Plaintiffs do
not appear to rely on any decision made by Chief Graham to support their claim
against the County, or against Chief Graham in his official capacity.  Accordingly,
the Court deems abandoned any argument that Graham was a final policymaker
under § 1983.  Under the facts of this case, Graham was not and could not have
been a final policymaker, and no other official is identified as meeting the final
policymaker test.  This is especially true because Graham assumed his duties as

---

[14] That the County is not a proper defendant in this case does not prohibit
Plaintiff from asserting claims against Jones individually.

police chief at most a few hours before the incident occurred.  Even had Graham been police chief for a longer period, he would not have been a final policymaker for purposes of § 1983.

Final policymaking authority does not vest where an official's decisions are subject to meaningful administrative review.  Quinn v. Monroe Cty., 330 F.3d 1320, 1325 (11th Cir. 2003).  Defendants point to local ordinances indicating that hiring, discipline and termination decisions by any DeKalb County Chief of Police are subject to meaningful review.  Under the Organizational Act of DeKalb County, the chief executive has exclusive authority to appoint all employees and officials of the county.  (Def. MSJ, at 8) (citing Organizational Act of DeKalb County § 13(d)).  An applicant to the police force must complete several tests.  After satisfactory completion of the tests, the applicant's information is presented to the Chief of Police.  (Def. SMF, at ¶ 3.)  If the Chief of Police recommends an applicant, a hiring panel is convened to interview the applicant in person.  (Id. at ¶ 4.)  The hiring panel interviews the candidate and decides to either recommend or not recommend that the applicant be employed.  (Id. at ¶ 5.)  If the panel does not recommend the candidate, no employment offer is extended to the applicant, even if the applicant received a favorable review from the Chief of Police.  In his response,

Plaintiff does not offer any evidence or reason why this process does not constitute meaningful administrative review.  The Court finds that the Chief of Police's role in the hiring process is not that of a final policymaker, particularly because any recommendation the Chief makes is subject to approval by the hiring panel.  See Morro v. City of Birmingham, 117 F.3d 508, 514 (11th Cir. 1997) (stating that a city personnel board's reversal of a police officer's suspension by the chief of police "demonstrates that the Personnel Board is not merely a rubber stamp for the Chief").

A police chief's decision to fire or discipline a police officer also is subject to meaningful review.  The Code of DeKalb County gives a department head the authority to impose discipline and dismiss employees; however, the decision is subject to review by a hearing officer who has the right to reverse a disciplinary action if it was based on an error in fact or was motivated by a non-job related factor.  (Def. MSJ, at 9-10) (citing Code of DeKalb County, § 20-194).  Plaintiff does not dispute these review mechanisms and does not offer any evidence that they do not constitute meaningful administrative review.  Based on these procedures, the Court finds that meaningful administrative review of the Police Chief's decisions to hire, discipline, or terminate existed and that Defendant Graham was not the final

policymaker over these matters.[15]  For all of the reasons stated above, the Court

finds the County cannot be liable under § 1983 for the damages alleged by Plaintiff

and summary judgment on Plaintiff's § 1983 claims is appropriate.

C.    Qualified Immunity as to Defendant Graham

Defendants next argue that Defendant Graham is entitled to qualified

immunity for Plaintiff's claims against him in his individual capacity.  (Def. MSJ, at

21.)  Plaintiff does not respond to Defendants' argument.  Failure to respond to an

opposing party's arguments regarding a claim constitutes an abandonment of that

claim and warrants the dismissal of the claims of the opposing party.  Bute v.

Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D.Ga. 1998) ("Because plaintiff has

failed to respond to this argument or otherwise address this claim, the Court deems

it abandoned."); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1137 (N.D.Ga.

1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles

Defendant to summary judgment on these claims.").  Because Plaintiff abandoned

his claims against Defendant Graham in his individual capacity, Defendants'

---

[15]  Defendants argue that Plaintiff cannot claim that Defendants ratified
Jones' previous bad acts in order to prove the County had a custom and policy of
ignoring Defendant Jones's shortcomings.  (Def. MSJ, at 12-15.)  Plaintiff,
however, does not appear to rely on this argument, and the Court does not consider
it.

motion for summary judgment on these claims is appropriate.

  D.  <u>Sovereign and Official Immunity as to Plaintiff's State-law Claims</u>

  Defendants argue that Plaintiff's state-law claims against the County are barred by sovereign immunity. (Def. MSJ, at 27-28). Plaintiff argues that Georgia purchased liability insurance for the negligence of its officers arising from the use of motor vehicles, and thus the County waived its sovereign immunity with respect to the damages alleged in this action. (Pl. Resp. to Def. MSJ, at 38.)

  "As a political subdivision of Georgia, a county and its officers sued in their official capacities have the same sovereign immunity protection as the state." <u>Hill v. DeKalb Reg'l Youth Detention Ctr.</u>, 40 F.3d 1176, 1197 n. 36 (11th Cir. 1994) (citing <u>Toombs County v. O'Neal</u>, 330 S.E.2d 95 (Ga. 1985)). A county may not be held liable unless made so by statute, and the intention to waive sovereign immunity and impose liability must be clear from the statute's face. O.C.G.A. § 36-1-4; <u>see also</u> <u>Early County v. Fincher</u>, 360 S.E.2d 602, 604 (Ga. App. 1987). The Georgia state statutes for assault, false imprisonment, and kidnapping under which Plaintiff seeks relief do not abrogate the County's sovereign immunity, thus the County did not waive sovereign immunity under these statutes. <u>See</u> O.C.G.A. §§ 51-7-20, 16-5-20, 16-5-40.

Plaintiff argues the County waived its sovereign immunity because it purchased certain vehicle liability insurance.  This argument fails.  Under O.C.G.A. § 33-24-51(b), sovereign immunity is waived for a loss arising out of claims for the *negligent* use of a motor vehicle if the pertinent subdivision of the state purchases insurance as described in § 33-24-51(a).  O.C.G.A. § 33-24-51(B).  The statute requires, however, that the insurance "provide[] liability coverage for the *negligence* of a duly authorized officer . . . in the performance of his official duties" and only "to the extent of the amount so purchased."  Id. (emphasis added).  The waiver is only for negligent operation of a vehicle, and in this case, Plaintiff alleges that Defendant Jones *intentionally* kidnapped, falsely imprisoned and assaulted him.[16]  See Chamlee v. Henry County Bd. of Educ., 521 S.E.2d 78, 82 (Ga. App. 1999) ("[W]e hold that O.C.G.A. § 33-24-51 (b) provides for waiver of sovereign immunity to the extent of the amount of liability insurance purchased for the negligence of duly authorized officers . . . in the performance of their official duties that arises out of either ownership, maintenance, operation, or use of a motor

---

[16]  Plaintiff's Complaint alleges that Defendant Jones: (1) intentionally effected an unlawful arrest, (2) intentionally falsely imprisoned and confined him; (3) abducted and kidnapped him by transporting him outside DeKalb County in a police cruiser; and (4) intentionally committed aggravated assault with the intent to injure or murder him.  (See Compl., at ¶¶ 6, 7, 8, 9.)

vehicle.").  Thus, this statute does not waive the County's sovereign immunity for the claims asserted in this action.[17]

Defendants also argue that Graham is entitled to official immunity under state law as to Plaintiff's state law claims against him for kidnapping, false imprisonment, and assault.  Plaintiff also does not respond to this argument and therefore abandons his state law claims against Defendant Graham.  Accordingly, summary judgment on Plaintiff's state-law claims is appropriate.[18]

---

[17]  The insurance policy submitted by Plaintiff's attorney demonstrates that the actions complained of by Plaintiff are not covered.  Section II(B) of the policy, titled " Exclusions," provides: "This insurance does not apply to . . . bodily injury . . . expected or intended from the standpoint of the insured."  The policy defines an "insured" as "anyone else while using with your permission a covered auto." (Insurance Policy, attached to Puglise Affidavit [80], at 2.)

[18]  Plaintiff's Complaint is not entirely clear as to exactly what state-law claims are being asserted against Defendants, though it does enumerate claims under the Georgia statutes for false imprisonment, kidnapping, and aggravated assault.  It is questionable whether Plaintiff asserts a state-law tort claim of negligent hiring or retention against Defendants.  In his Response, Plaintiff alternates between citing state law and federal law on negligent hiring and failure to train or supervise to argue that the County may be held liable under § 1983 for Jones's actions.  Regardless of whether or not Plaintiff asserts any state-law claims against Defendants involving negligence, Plaintiff does not argue he asserts other claims over which sovereign immunity has been waived.

## III.   CONCLUSION

For the reasons addressed in this order, summary judgment is required to be entered in favor of the County and Defendant Graham.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants DeKalb County's and Lewis Graham's Motion for Summary Judgment [61] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Brief in Excess of Page Limitation [65] is **GRANTED**.

**IT IS FURTHER ORDERED** that  Plaintiff's Motion for Leave to File Plaintiff's Responsive Brief in Excess of Page Limitation [77] is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter default against Defendant Jones and a hearing on Plaintiff's Motion for Default Judgment is scheduled for February 2, 2007 at 10:00 a.m. in Courtroom 1708.

**SO ORDERED** this 4th day of January, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE